UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSHUA LEE HOSKINS, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> BRANDON LUEKER, C/O MAYS, ) <br> WESLEY SHIRLEY, P. BAKER, ERIC ) <br> WANGLER, DON WANACK, ) <br> OFFICER HERMANN, OFFICER ) <br> TOMSHACK, G. HALE, DANIEL J. ) <br> HARRISS, CHAD WALL, C. HECK, ) <br> MICHAEL BAILEY, PATRICK PEEK, ) <br> JANA RUETER, OFFICER HAGSTON, ) <br> SETH MERACLE, BRIAN MILLER, ) <br> CHAD ADAMS, KALE LIVELY, ) <br> OFFICER BELL, SCOTT PETITJEAN, ) <br> JOSEPH DUDEK, SERGEANT ) <br> COOLEY, STEVE MUMBOWER, ) <br> OFFICER BROCK, CHARLES ) <br> SWISHER, JAMES GROVES, INTEL ) <br> OFFICER RODMAN, and ) <br> LIEUTENANT JOHNSON, ) <br> ) <br> Defendants. ) | Case No. 3:20-cv-00776-GCS |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff Joshua Hoskins, an inmate in the custody of the Illinois Department of Corrections ("IDOC") currently incarcerated at Dixon Correctional Center, brought suit against Defendants on August 10, 2020, for allegations stemming from actions against Plaintiff while he was incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). (Doc. 1). On August 31, 2020, Plaintiff filed an amended complaint, in

which he brings two counts against all defendants pursuant to 42 U.S.C. § 1983: (i) a First Amendment burden of religion claim, and (ii) a First Amendment claim for retaliation. *See* (Doc. 29).

Now before the Court is a motion for summary judgment on the issue of exhaustion of administrative remedies filed by Defendants Meracle, Adams, Bailey, Baker, Bell, Cooley, Dudek, Groves, Hagston, Hale, Harriss, Heck, Herman, Johnson, Lively, Lueker, Mays, Miller, Mumbower, Peek, Petitjean, Rodman, Shirley, Tomshack, Wall, Wanack, and Wangler (the "IDOC Defendants"). (Doc. 73). Also, before the Court is a motion for summary judgment on the issue of exhaustion of administrative remedies filed by Defendant Rueter. (Doc. 68). For the reasons outlined below, both motions are **GRANTED.**

## FACTUAL BACKGROUND

Plaintiff identifies as an Islam Muslim, and he alleges that Defendants did not allow him to possess the Holy Quran, a kufi, a watch, or a prayer rug between April 1, 2020 and August 10, 2020. (Doc. 29, p. 2). He also claims that he was prohibited from attending all Islamic services. *Id.* According to Plaintiff, Defendants told Plaintiff that they would monitor his mail and destroy any requests related to his ability to practice his religion; they would also place him in segregation on false disciplinary charges. *Id.* at p. 3. Specifically, from April 24th through May 25th, Plaintiff claims that Defendants Lueker, Swisher, Wall, Hale, Heck, Brock, Bailey, Rueter, Grove, Meracle, Miller, Adams, Lively, Bell, Cooley, Dudek, Petitjean, Mumbower, Mays, Shirley, Wangler, Wanack, Peek, Hermann, Tomshack, Harriss, and Johnson prevented him from fasting during

Ramadan. *Id*. On May 11th and June 11th, Defendants Wall, Harriss, and Brook allegedly searched Plaintiff's property and threatened to issue false disciplinary tickets if they found Islamic materials. *Id*. In his amended complaint, Plaintiff states that the last date of the events giving rise to the complaint was August 10, 2020.

None of the defendants identify any potentially exhausted grievance in Plaintiff's grievance file, and Plaintiff himself admitted during the hearing on the motions for summary judgment that he did not attempt to exhaust any grievances on the issues underlying his complaint. Instead, Plaintiff contends that such an attempt would be futile, as his administrative remedies are unavailable to him. *See* (Doc. 78, p. 2). Specifically, during the hearing, Plaintiff explained that his counselor, Counselor Brown, refused to process his grievances relating to this event. Plaintiff contends that counselors did not return grievances which would get the staff in trouble. Therefore, when he wrote grievances which did not state that a specific counselor was denying him access to the grievance process, he would get a response from the grievance office. *See* (Doc. 132, p. 8).

Though Plaintiff contends that his grievances would not be processed, he also admitted that his CHAMPS records show that Counselors Mercier, King, Reid, Hale, Rodely and Brown each processed his grievances at different times. (Doc. 132, p. 14). However, the counselors who processed Plaintiff's grievances were not the same as those who collected grievances directly from him. *Id*. Plaintiff asserts that the counselors who directly collected his grievances would destroy them before putting them in the lockbox for delivery to the individuals who would then process the grievances. *Id*. at p. 14-15.

During the hearing, Plaintiff called Ms. Shayne Mercier and Ms. Amy Hill as witnesses. Ms. Mercier is a grievance officer at Pinckneyville. When asked about the procedure for missing grievances, Ms. Mercier explained that she personally told Plaintiff to refile his grievances if he did not receive a response within forty-eight hours of initially submitting the grievances. *See* (Doc. 138, p. 51). Ms. Mercier also explained that counselors who collect grievances have combinations necessary to open the lockboxes where the grievances are initially deposited. *Id*. at p. 60. If an inmate then attempted to follow up on a grievance before receiving a response, she would respond to that second grievance by stating that the first grievance is still pending investigation. *Id*. at p. 52. If a grievance described improper conduct by a member of the prison staff, she would question that staff directly as to the events at issue. *Id*. at p. 54.

Ms. Hill testified that she is currently employed as a counselor at Pinckneyville. She explained that she needed an inmate to provide general dates when asking about missing grievances; when she had those dates, she could ask the Grievance Officer whether that inmate had any open grievances fitting that timeframe. *See* (Doc. 138, p. 64). She also explained that if an inmate wrote a grievance stating that he had previously filed a grievance for misconduct, but he had not received a response to that previously filed grievance, then the second grievance would act as a request slip because it would not be addressed to the officer accused of misconduct. *Id.*

## LEGAL STANDARDS

Summary judgment is proper when a moving party demonstrates that the record cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). In order to survive a motion for summary judgment, the non-moving party must provide admissible evidence from which a reasonable jury could find in favor of the non-moving party. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Traditionally, the Court's role in determining a motion for summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but is instead to determine whether there is a genuine issue of material fact. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, in *Pavey v. Conley*, the Seventh Circuit held that a judge, rather than a jury, should determine whether factual issues relating to the defense of the failure to exhaust administrative remedies exist. 544 F.3d 739, 741 (7th Cir. 2008). If the Court determines that a prisoner did not exhaust his administrative remedies, the Court may select one of the three following outcomes: (a) if the plaintiff still has time to do so, the plaintiff must go back and exhaust his administrative remedies; (b) if the plaintiff's failure to exhaust was innocent, as where prison officials prevent a prisoner from exhausting his remedies, the plaintiff must be given another chance to exhaust; or (c) if the failure to exhaust was the prisoner's fault, the case is over. *Id.* at 742.

The Prisoner Litigation Reform Act ("PLRA") governs lawsuits filed by inmates and states that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted."42 U.S.C. § 1997e(a). In order to satisfy the PLRA's exhaustion requirement, prisoners must strictly adhere to the grievance process. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Prisoners must exhaust their remedies before filing suit. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust administrative remedies while that suit is pending. *Id*. Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Prisoners must follow a prison's administrative rules when exhausting their remedies. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). As an inmate confined within the IDOC, Plaintiff is required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") in order to exhaust his claims properly. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures require prisoners to submit a grievance to a counselor within sixty days of discovering the underlying incident. *See* 20 ILL. ADMIN. CODE § 504.800. The grievance must state the "factual details regarding each aspect of the offender's complaint including what happened, when, the name of any individual involved, and where the incident occurred." 20 ILL. ADMIN. CODE § 504.810(a). If a prisoner is not satisfied with the counselor's response, then the prisoner can submit a formal grievance to the prison's grievance officer. *Id*. at (a)-(b). The officer must then review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within two months of receipt of the grievance, when reasonably feasible under the circumstances, the grievance

officer must report findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 ILL. ADMIN. CODE § 504.830(e). If the prisoner is still not satisfied with the CAO's decision, the prisoner can formally appeal to the Director through the ARB within thirty days of the CAO's decision. *See* 20 ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of the grievance officer's report and the CAO's decision to the appeal. *Id.* The ARB then submits its recommendation to the Director, who is then responsible for issuing the IDOC's final decision. *See* 20 ILL. ADMIN. CODE § 504.850(f).

The grievance process also permits an inmate to file an emergency grievance directly to the CAO. *See* 20 ILL. ADMIN. CODE § 504.840(a). The CAO may determine if there is a substantial risk of imminent personal injury or other serious harm to the offender. *Id.* If the CAO determines that the grievance is a non-emergency, the prisoner is notified in writing that the prisoner may resubmit the grievance as a non-emergency and move forward with the standard grievance process. *See* 20 ILL. ADMIN. CODE § 504.840(c).

The statutory purpose of the PLRA is to "afford corrections officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). This allows the prison administration an opportunity to fix the problem or to reduce damages and to shed light on factual disputes that may arise in litigation. *See Pozo*, 286 F.3d at 1023-24. To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002). Accordingly, a prisoner cannot satisfy the exhaustion requirement by filing an untimely or otherwise

procedurally defective grievance. *See Woodford*, 548 U.S. at 83. Unless a prisoner completes the administrative review process by following the rules established for that process, exhaustion has not occurred. *See Pozo*, 286 F.3d at 1023.

## ANALYSIS

Though Defendant Rueter focuses on the credibility of Plaintiff's assertion that Counselor Brown refused to process his grievances, as a primary and decisive concern, the Court finds the IDOC Defendants' assertion that Plaintiff prematurely filed his complaint before exhausting his remedies to be determinative. *See* (Doc. 74, p. 11). Because Plaintiff filed his lawsuit prematurely, the Court finds that his grievances were not exhausted at the time he filed suit. Accordingly, the motions for summary judgment are granted.

There are three circumstances in which an administrative remedy is not capable of use to obtain relief (and therefore unavailable): (i) when the remedy operates as "a simple dead end," in which officers are unable or unwilling to provide relief; (ii) when, though mechanisms exist through which inmates can technically obtain relief, the mechanisms are so opaque no ordinary inmate can navigate them; or (iii) when prison administrators thwart an inmate's attempt to take advantage of available remedies through "machination, misrepresentation or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016); *see also Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008); *Pavey*, 544 F.3d at 742; *Dole* 438 F.3d at 808. When a plaintiff properly follows the procedure for exhausting administrative remedies, but prison officials mishandle the grievance, the remedy is rendered unavailable. *See Dole*, 438 F.3d at 811. For example, if the ARB rejected an appeal

on the basis of a grievance officer's misidentification of the inmate's prison number, a plaintiff could argue that this mistake rendered his attempts to exhaust his administrative remedies thwarted. *See Ross v. Bock*, No. 16-C-8672, 2017 WL 6758394, at *3 (N.D. Ill. Nov. 29, 2017).

If grievance personnel do not respond to an inmate's grievance, that inmate's administrative remedies are also rendered unavailable. *See Dole*, 483 F.3d at 809. However, in order for an inmate's remedies to be unavailable due to lack of a response, an inmate must have no indication that officials are pursuing his case. *See Reid v. Balota*, 962 F.3d 325, 331 (7th Cir. 2020). For example, when prison officials state that they will inform an inmate of the status of his or her grievance within sixty days, "whenever possible," a period of silence exceeding six months nevertheless does not render remedies unavailable because officials may still be investigating a complicated case. *Ford*, 362 F.3d at 400. In contrast, in *Reid*, the Seventh Circuit Court of Appeals found that a two-month period of silence rendered administrative remedies unavailable only because the inmate had no other reason to believe that anyone was "looking into" his grievance. 962 F.3d at 331.

Although prison officials may, in some circumstances, render a prisoner's administrative remedies unavailable by failing to respond to a grievance, a court cannot find that the administrative process was not available when a prisoner rushed to court to file a lawsuit shortly after an administrative response was required. *See, e.g., Mlaska v. Shah,* Nos. 10-2255, 10-2401, 10-3795, 428 Fed. Appx. 642, 645 (7th Cir. June 29,

2011)(stating that prisoner failed to exhaust where, at best, he filed lawsuit one month after the warden's 60–day response period elapsed); *Jamison v. Franko*, No. 12 C 0242, 2013 WL 5166626, at *3 (N.D. Ill. Sept. 13, 2013)(noting that prisoner failed to exhaust where he filed suit less than two weeks after the 30–day response period had elapsed); *Gregory v. Santos*, No. 07-669-JPG-CJP, 2010 WL 750047, at *6 (S.D. Ill. Jan. 19, 2010)(stating that prisoner failed to exhaust where he gave the ARB "only a few days leeway beyond the six-month period"). Instead, prisoners must file suit only after a sufficient period of time has elapsed for a required administrative response. *See, e.g.*, *Kyles v. Mathy,* No. 09–1084, 2010 WL 3025109, at *4 (C.D. Ill. Aug. 2, 2010)(noting that a prisoner exhausted his administrative remedies when he waited approximately one and a half months after the expiration of the two-month response deadline before moving on to the next step of the grievance process); *Green v. Hartman,* No. 04 C 4304, 2006 WL 2699336, at *3 (N.D. Ill. Sept. 18, 2006)(finding that prisoner exhausted where he waited to file suit until two months after the expiration of the 30–day response deadline); *Goodman v. Carter,* No. 2000 C 948, 2001 WL 755137, at *3 (N.D. Ill. July 2, 2001)(noting that prisoner exhausted where he waited to file suit until 45 days after the warden's response was due). In Illinois, grievances officers are generally permitted sixty days in which to report his or her findings and recommendations to the CAO. *See* 20 ILL. ADMIN. CODE § 504.830(e).

As the IDOC Defendants point out, Plaintiff filed his complaint simultaneously with the last day of his allegations. The final date of the incidents Plaintiff alleges and the date on which Plaintiff first filed his complaint are both on August 10, 2020. *See* (Doc. 74, p. 11); *see also* (Doc. 29). Plaintiff further filed his amended complaint only three weeks

later, on August 31, 2020. *See* (Doc. 29). Plaintiff therefore failed to wait an appropriate amount of time for officials to investigate his claims and respond to his grievances before filing either his complaint or his amended complaint, and thus Plaintiff failed to exhaust his administrative remedies.

Plaintiff asserts that his administrative remedies were not available to him because his counselor, Counselor Brown, refused to process his grievances in retaliation for Plaintiff's past litigation history. *See* (Doc. 78, p. 2-3). Plaintiff explained at the hearing that counselors would not process grievances which would support Plaintiff bringing a lawsuit against prison staff, but would process those which otherwise did not name prison administration or grievances against them. So, for example, staff would answer Plaintiff's grievances requesting information on his open grievances, which did not directly reflect on staff conduct, but they would not process grievances which complained directly that staff would not permit Plaintiff to attend religious services.

If true, Plaintiff's contentions could render his administrative remedies unavailable to him. However, Plaintiff must nevertheless wait a sufficient amount of time to file his complaint and give prison officials an opportunity to make his administrative remedies available and to investigate his claims. An administrative remedy is considered "available" under the PLRA so long as an administrative authority has the ability to take some action in response to the grievance. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). An inmate's *belief* that exhaustion is futile is insufficient to render a remedy unavailable if officials still have a window of time in which they may investigate or otherwise act on a grievance. *See Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016); *see also Dole*, 438 F.3d

at 809. As Plaintiff filed his complaint on the last day of the events underlying his complaint, Pinckneyville administrators would have had *at least* sixty days in which to respond to any grievances filed on that same day. As officials still had an opportunity to investigate Plaintiff's claims, his administrative remedies were available to him, and exhaustion was not futile. Accordingly, the motion for summary judgment on the issue of exhaustion is granted.

## CONCLUSION

For the above stated reasons, Defendants' motions for summary judgment for failure to exhaust administrative remedies (Doc. 68, Doc. 73) are **GRANTED.** The Court directs the Clerk of the Court to dismiss this case without prejudice.

**IT IS SO ORDERED.**

**DATED:  August 1, 2022.**

Digitally signed by Judge Sison 2
Date: 2022.08.01 15:23:19 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**